## MIKE DELANY v. THE STATE.

1. NEW TRIAL—WHEN AFFIDAVIT FOR, NOT SUFFICIENT.—A motion for a new trial on account of newly-discovered testimony, made by one found guilty of crime, which is supported by the affidavit of one jointly indicted, should be overruled, unless there was no evidence against the affiant on the trial.
2. ARSON.—WHEN A WILLFUL BURNING OF A HOUSE DOES NOT CONSTITUTE.—Though a prisoner may willfully fire a jail, yet if it appear that his purpose was only so to burn it as to make his escape, and with no design of burning the house down, it would not be the willful burning of the house contemplated by the law of arson.

APPEAL from Fannin.   Tried below before the Hon. J. C. Easton.

Mike Delaney was tried at the February term, 1874, of the District Court of Fannin county, on an indictment charging him, jointly with John Whaley, with the willful burning of a calaboose used for confining prisoners in the city of Bonham.   Late in the evening of the 17th March, 1874, Delany and Whaley were arrested for drunkenness, and confined in the calaboose in Bonham during the following night.   Soon after being imprisoned, Delaney, still drunk, swore that he would burn up the town of Bonham before the next Tuesday night.   Late in the night of 17th March the cries of defendant were heard calling for water to extinguish fire.   A fire had been kindled on the floor with staves of a bucket, and the floor burned through. Water was handed to defendant through the grates of the prison, with which he extinguished the fire.

No witnesses were introduced for the defense.  The judge, after copying in his charge the statutory definition of arson, and informing the jury that a calaboose was a public building, instructed it further, as follows: "On the trial of a criminal action, when the facts have been proved that constitute the offense, it devolves on the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission.   Drunkenness is no excuse for crime.   A man is always presumed to intend the natural consequences of his own act, and if you have a reasonable doubt arising from the evidence that this defendant did not willfully set fire to the calaboose, or if he did not aid in doing so, you will find him not guilty; but if you believe that he did willfully set fire to it, or aid in doing so, you will find him guilty as before charged.

Verdict of guilty, and punishment assessed at five years in the penitentiary.   There was a motion for new trial, supported by the affidavit of the co-defendant, Whaley, to the effect that the fire was accidentally communicated to

the floor from a pipe which one of the prisoners had been smoking. Motion overruled, and defendant appealed.

No briefs for appellant have reached reporters.

*George Clark, Attorney General,* for the State.

ROBERTS, CHIEF JUSTICE.—We do not think the court erred in admitting the threat of defendant, "that he would burn up the calaboose and town of Bonham before the next Tuesday night," while he was imprisoned. It does not stand on the same ground of confession of having previously committed an offense made after and during his imprisonment. Nor do we think the affidavit of his co-defendant, that the burning was accidental, was a good ground for a new trial, as presented in defendant's motion, because the facts developed on the trial did not show that there was no evidence against his co-defendant, Whaley. It was nearly as strong against one of them as against the other, the threat made by defendant on the previous evening being the only difference. The only other ground in the motion for a new trial was that the verdict was contrary to the law and evidence. Arson is the willful burning of a house. The house need not be consumed with fire to constitute the offense. It will be sufficient to show that a person set fire to the house, to the extent that some part of the house was on fire, unless it is made clearly to appear that it was accidental, or was done for some other object wholly different from the intention to burn up or consume the house. If, for instance, it appeared from the evidence that a person confined in prison set fire to the door to burn off the lock so as to make his escape, or that he burned a hole in the floor or in the wall for the same purpose, it would not be arson. So it has been held by the courts of other States. (The People *v.* Cotteral *et al.*, 18 Johns., 115; The State *v.* Mitchell, 5 Ired., 350.)

If, however, a prisoner, or a number of prisoners in concert, should set fire to a jail without such definite purpose, but for the purpose of burning the jail sufficiently to produce the alarm of fire, and in the consequent confusion make an escape, being at the same time indifferent as to whether the jail was consumed or not, that would be arson.

In this case the evidence is circumstantial. There is no direct evidence that both or either one of the two prisoners set fire to the calaboose, and the circumstances tended very strongly to show that they were endeavoring to burn a hole in the floor, so as to make their escape through it. The fire must have been burning for some time, perhaps several hours, before daylight. It is not reasonable to suppose, considering the trivial importance of their offense, as indicated by their fines next day, after they were put in drunk, that they were desperate enough to intend to burn up the calaboose during the night, with themselves in it. When they gave the alarm of fire, about daylight, they did not act like persons who had set fire to the house to produce general alarm and escape in the confusion. Had that been their design, we should have reasonably expected that they would have waited until the fire had taken greater effect, and then, upon giving alarm, have let others rush into the calaboose to extinguish the fire, with the hope of there having been a chance to rush out. Instead of that, defendant called for water the first thing, and it being handed to him through the grated window, he put out the fire himself on the inside, and another person, crawling under the calaboose, put it out on the under side of the floor; so that the fire was entirely extinguished, and the prisoners were still in prison, when the marshal of the town came with the key, unlocked the door, went in, and examined the premises in reference to the burning. There is not the least intimation on the part of any of the witnesses that they made any effort to escape. The marshal does not even state that he summoned a guard when he

took them before the mayor, where they were each fined two dollars and fifty cents and discharged.

The whole trial of the case seems to have proceeded upon a view of the law, that if the defendant did willfully set fire to the calaboose, he was guilty of arson, whatever might have been his intention in doing it. The jury was instructed that: " On the trial of a criminal action, when the facts have been proved which constitute the offense, it devolves on the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." This charge in this shape, though its meaning may be well understood by a lawyer, may sometimes be well calculated to mislead a jury. The facts or circumstances of excuse may have been already shown by the evidence for the prosecution, and then it would not devolve on the defendant to show them. So in this case, all the witnesses that knew anything about the transaction had been examined by the State. The defendant had no means of showing anything more, as he could not put his co-defendant on the stand as a witness. The jury might have been correctly told that it devolved on defendant to show such facts, unless they appeared in the evidence of the prosecution, and then their minds would have been directed to the facts in proof, and not be left to the possible conclusion that, as the defendant had introduced no evidence on his part, there was none favorable to him before them already for their consideration.

Another objection to this charge in reference to this case is, that it did not indicate to the jury what facts would be an excuse for willfully setting fire to the calaboose, or, indeed, that there could possibly be any such facts. It is true that it was not incumbent on the court to indicate any such facts, if the evidence did not point to them. For instance, it was not required that the court should have told the jury that if they believed the defendant, upon recovering from his drunken spell, was about to freeze and

built a little fire with the staves and hoops of the bucket on the floor to avoid that calamity, and did not design to burn the building to any dangerous extent, under the reasonable expectation of being able to control the fire, that would excuse him from the criminality of arson, because there was no evidence that it was then cold, and no other evidence tending to establish such a conclusion. But there was evidence tending to show that if the defendant willfully set fire to the floor at all, it was done to burn a hole through it to make his escape. And the charge should, therefore, have indicated that as a fact, which, if they believed it to be true from the evidence, would be an excuse sufficient to relieve him from the charge of arson.

In reference to the facts in evidence, all being circumstantial, the matters to be considered in coming to a conclusion were that the floor of the calaboose was certainly on fire, and a small hole had been burned through it. The staves of the bucket were found partially burnt, with the burnt ends towards and near the fire. Some coals were found under the floor, with some chips and shavings near them. There was no water left in the calaboose. The two prisoners had been put in while drunk on the evening previous, most probably only because they were drunk, and one of them noisy.

Under a view of all these circumstances, the questions presenting themselves were, (as no one saw the thing done who can give evidence, if any one did see it,) Was the fire accidental or was it set on purpose? If on purpose, was it done by defendant, or his co-defendant in the building, or by some one under it? If done by some one in the building, was it done by both or by one, and which one? If defendant was implicated in purposely doing it, was it done to consume the building with fire, or to make a hole to get out, or was it done with a reckless disregard as to whether the building was consumed with fire or not, and for the purpose of producing alarm and confusion to facilitate their escape?

That the burning was done by defendant, was a material fact to be found by the jury, and which was not to be taken for granted simply from the fact that he could have done it. If they had been satisfied of that fact beyond a reasonable doubt from a consideration of all the evidence, then they might have presumed that it was a willful burning, if there was not sufficient evidence to satisfy them that it was not willful, but was only accidental, or done for the purpose only of making a hole in the floor through which to escape. (As to accidental or negligent burning, see 2 Russ. on Crimes, 549; Whart. Cr. Law, sec. 1663.)

In New York the statute makes arson the "willful burning," &c., as in this State.

In North Carolina the statute makes arson the "willful and malicious burning," &c., as at common law.

In both of those States it has been held, in well-considered cases, that where it appeared reasonably certain, from all the facts and circumstances in evidence, that the purpose of the prisoner in jail in setting fire to it was only and solely to burn the lock off of the door, (in one case,) or to burn a small hole (in the other case) to enable him to make his escape, it would not be the willful burning of the house as contemplated by the law of arson. They both also held that if defendant set fire to the house he would be guilty of arson, unless it did clearly appear that his intention in doing it was only to so burn it (as above stated) as to make his escape. (People *v.* Cotteral *et al.,* 18 Johns., 115; The State *v.* Mitchell, 5 Ired., 350.)

Concurring in this view of the law, we are of opinion that the court failed to charge the law of the case as it was required to be done by facts in evidence, for which error the judgment is reversed and cause remanded.

REVERSED AND REMANDED.